*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERRA K. OLGER,

        Plaintiff-Appellee,

v

NICHOLAS T. MORROW,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 368092
Isabella Circuit Court
Family Division
LC No. 2021-016878-DC

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

In this child-custody dispute, defendant appeals by right the trial court's order denying his motion to change custody. Because the trial court did not err in determining that defendant failed to establish proper cause or a change in circumstances sufficient to consider a change in custody, we affirm.

## I. BACKGROUND

The parties share joint legal custody of PM, who was born in October 2019, and plaintiff is PM's primary physical custodian. Under the stipulated custody order entered just shy of two years before defendant filed his motion, defendant had parenting time on Wednesday evenings and every other weekend. PM suffered from recurring ear infections since before he was a year old. Upon the recommendation of PM's physician, the parties agreed in September 2021 to place "tubes" in PM's ears in an effort to curb or eliminate the recurring ear infections. Despite the procedure, PM continued to get ear infections and, as a result, he attended medical appointments quite frequently. The matter currently before this Court arose when defendant filed a motion to change physical custody in which he alleged that plaintiff was (1) not properly caring for PM, (2) making important decisions regarding PM's health without first discussing the matters with him, and (3) alienating PM's relationship with him. A hearing was held before a referee, at which both parties testified and presented additional witnesses and written evidence. Following the hearing, the referee recommended that defendant's motion be granted in part. Both parties objected to the referee's recommendation, and, following a de novo review, the trial court rejected the referee's

-1-

recommendations and denied defendant's motion, concluding that defendant failed to present sufficient evidence to establish proper cause or a change of circumstances. This appeal followed.

## II. STANDARDS OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a child custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This Court applies "three standards of review in custody cases." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). Factual findings, such as the circuit court's determination of whether a party demonstrated proper cause or a change of circumstances, are reviewed under the great weight of the evidence standard. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id.* "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted). "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___NW3d ___ (2023) (Docket No. 362488); slip op at 7 (quotation marks and citation omitted).

## III. DEFENDANT'S MOTION TO CHANGE CUSTODY

Defendant argues that the trial court erred by denying his motion to change custody because its finding that he failed to establish proper cause or a change of circumstances was against the great weight of the evidence.[1]

In a child custody dispute, a custody order may only be modified "for proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). "[T]o establish 'proper cause'

---

[1] Defendant also argues that the trial court erred by reviewing the existing record without holding its own evidentiary hearing prior to denying his motion. We decline to address the issue because defendant waived the issue by affirmatively consenting to the trial court reviewing the record in lieu of holding an evidentiary hearing. See *Yachcik v Yachcik*, 319 Mich App 24, 33 n 3; 900 NW2d 113 (2017). Regardless, an evidentiary hearing need not be held to address the threshold consideration of whether there was proper cause or a change of circumstances, and the trial court was permitted by statute to do what it did, MCL 552.507(5), (6); MCR 3.215(F)(2), which defendant acknowledges in his brief on appeal. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) ("Although the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic."); *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003) ("Often times, the facts alleged to constitute proper cause or a change of circumstances will be undisputed, or the court can accept as true the facts allegedly comprising proper cause or a change of circumstances, and then decide if they are legally sufficient to satisfy the standard.").

necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court." *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003). "The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*. "[T]o establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. A showing of "normal life changes," good or bad, is insufficient. *Id*. "[I]f the movant does not establish proper cause or change in circumstances, then the court is precluded from holding a child custody hearing[.]" *Id*. at 508.

As noted, the trial court found that defendant could not establish proper cause or a change of circumstances based on his allegations that plaintiff was inadequately treating PM's recurring ear infections because plaintiff testified that she took PM to a physician as soon as she realized that PM had developed another ear infection and adhered to all of the physicians' recommendations when treating the infections. These findings are not against the great weight of the evidence. Defendant testified that plaintiff was not adhering to the proper treatments for PM's ear infections, but he admitted that he believed that to be the case based on what he determined was "proper treatment" through his own Internet research on recurring ear infections rather than any sort of discussion with PM's physicians.[2] Plaintiff, on the other hand, testified that she strictly adhered to the preventative treatment measures recommended by PM's physicians immediately after the tubes were placed, and she continued to employ some of those measures, such as covering PM's ears with a shower cap while he bathed or swam, even after the physicians instructed her that she no longer needed to do so. Plaintiff stated that she immediately scheduled medical appointments and filled prescriptions for PM as soon as she realized that he had an ear infection, and she adhered to all of the physicians' recommendations when treating PM's ear infections. Defendant did not provide any evidence that plaintiff was not adhering to the treatment recommended by PM's physicians or treating the infections so inadequately that it led to the

_____

[2] Defendant also argues that the trial court erred by stating that it was "required" to receive testimony from medical experts before it could conclude that plaintiff inadequately treated PM's ear infections. Defendant misconstrues the record. In its order, the court stated that defendant had established that PM had chronic ear infections and had attended medical appointments quite frequently as a result, but he introduced no evidence to support his claim that plaintiff failed to treat PM's ear infections effectively or in accordance with the physicians' recommendations. The court emphasized that defendant's allegations were entirely based on what "he had learned about the proper treatment of ear infections through his own internet research," rather than from someone with the requisite medical knowledge to provide such an opinion. The court was correct in stating that testimony regarding what constitutes "proper treatment" generally requires expert testimony, rather than lay opinion testimony, and that defendant, who was not a medical professional, did not have the requisite "scientific, technical, or other specialized knowledge" to provide such testimony, see MRE 701; MRE 702; *Elher v Misra*, 499 Mich 11, 21-22; 878 NW2d 790 (2016) The court's statements referring to medical experts were merely meant to underscore its conclusion that defendant failed to present sufficient evidence to support a threshold finding of proper cause or change of circumstances.

subsequent ear infections. Defendant also could not point to anything in the more than 500 pages of PM's medical documents showing that PM's physicians had any concerns with how plaintiff was treating the infections or that the ear infections still occurring was a cause for alarm.

The trial court's finding defendant could not establish proper cause or a change of circumstances based on his allegations that plaintiff failed to communicate with him about PM's medical appointments, and made important medical decisions without him, also is not against the great weight of the evidence. Though defendant initially claimed that plaintiff failed to inform him *at all* about PM's appointments, defendant knew who all of PM's physicians were and acknowledged that plaintiff had notified him of several appointments in the past. Plaintiff admitted that she recently began taking PM to counseling sessions to address night terrors that he had been having, but she did not know that "play therapy" constituted medical treatment that she was obligated to inform defendant of, and she had previously discussed the night terrors with defendant, which was why PM began attending counseling sessions to begin with. Regardless, defendant acknowledged that he now knew that PM was attending counseling, had spoken to PM's therapist on the phone, and agreed that PM should continue to go to counseling to address the night terrors.

Moreover, defendant was equally culpable in the poor communication; he took PM to the ER for treatment of an ear infection without ever informing plaintiff and attempted to schedule an appointment with PM's physician without consulting her. Despite this, the parties' communication seemingly improved over time, and PM always received the medical treatment that he needed and that the parties agreed on. Although disputes over a child's medical treatment can amount to proper cause or a change of circumstances if it significantly affects the child's health or ability to receive adequate medical care, *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011), the evidence clearly indicates that the miscommunication between the parties was not so extreme as to have a significant effect on PM's well-being or to constitute a change that has or "will almost certainly have an effect" on PM, see *Vodvarka*, 259 Mich App at 513-514.

The trial court's finding that defendant could not establish proper cause or a change of circumstances based on his allegations that plaintiff failed to properly dress PM for the weather was also not against the great weight of the evidence. Defendant took particular issue with the fact that several of the physician's notes indicated that PM was wearing only a diaper during the appointment, but plaintiff testified that she was required to remove all of PM's clothes except his diaper so that he could be properly weighed for the appointment. Defendant and PM's paternal grandmother both testified that PM was occasionally dirty and unkempt when they picked him up, and occasionally not wearing shoes or socks during parenting time exchanges, but defendant clarified that this only occurred in the summer months. As the trial court indicated, there was no evidence to indicate that PM's uncleanliness was pervasive or to an unreasonable degree.

It was also not against the great weight of the evidence for the trial court to find that defendant's allegations of parental alienation did not amount to proper cause or a change of circumstances. Defendant testified that plaintiff withheld parenting time on Christmas in 2022, but he also testified that he subsequently received make-up parenting time for the time that he was denied by plaintiff. Despite the allegations in defendant's motion that plaintiff repeatedly denied him parenting time, defendant presented no evidence that he was ever denied parenting time beyond the one occurrence on Christmas.

Defendant and PM's paternal grandmother also testified that they noticed some behavioral changes in PM shortly after Christmas in December 2022, noting that he was misbehaving, using inappropriate language, and calling defendant inappropriate names during his parenting times. Although defendant believed that plaintiff was the root cause of this behavioral change in PM, he presented no evidence in support of his allegations. Plaintiff and PM's maternal grandmother testified that plaintiff did not swear, use inappropriate words in reference to defendant, or otherwise disparage defendant in front of PM, and neither of them ever heard PM refer to defendant by inappropriate names. Plaintiff stated that she had no idea why PM would use such language toward defendant, but she noted that PM occasionally uses inappropriate language when he returned from parenting time, and she believed that it was possible that PM heard some of the inappropriate language that he was saying while out in public with her or defendant. Notably, plaintiff testified that she strongly believed that it was important for PM and defendant to have a relationship, and both defendant and PM's paternal grandmother testified that, despite PM's recent behavior, defendant and PM had a very close relationship. In light of such conflicting and inconclusive testimony, the trial court was free to make credibility determinations and determine the weight of the witnesses' testimony, to which we defer. See *Berger v Berger*, 277 Mich App 700, 705, 715; 747 NW2d 336 (2008). Defendant did not present sufficient evidence to demonstrate that PM's behavioral changes were something more than a normal life change or a result of some material change in his custodial environment with plaintiff. See *Vodvarka*, 259 Mich App at 513-514.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray